Edward J. LoBello, Esq.
Howard B. Kleinberg, Esq.
Jil Mazer-Marino, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
1350 Broadway, Suite 501
P.O. Box 822
New York, New York 10018-0026
Telephone: (212) 239-4999
Email:    elobello@msek.com
          hkleinberg@msek.com
          jmazermarino@msek.com

*Attorneys for Francisco Paniagua, as Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

**In re:**

**CFG INVESTMENT S.A.C.,**

    **Debtor in a Foreign Proceeding.**
------------------------------------------------------------X

Chapter 15

Case No. _____

**In re:**

**CORPORACION PESQUERA INCA S.A.C.,**

    **Debtor in a Foreign Proceeding.**
------------------------------------------------------------X

Chapter 15

Case No. _____

**In re:**

**SUSTAINABLE FISHING RESOURCES S.A.C.,**

    **Debtor in a Foreign Proceeding.**
------------------------------------------------------------X

Chapter 15

Case No. _____

**DECLARATION OF FRANCISCO PANIAGUA IN SUPPORT OF**
**(I) RECOGNITION OF FOREIGN MAIN PROCEEDING**
**PURSUANT TO 11 U.S.C. §§ 1515 AND 1517, AND**
**(II) RELIEF PURSUANT TO 11 U.S.C. §§ 1520 AND 1521**

Francisco Javier Paniagua Jara, of full age, hereby declares:

  1. I am the General Manager of CFG Investment S.A.C. ("**CFGI**"), a Sociedad Anónima Cerrada incorporated under the laws of Peru, being the indirect parent company of

1

Corporacion Pesquera Inca S.A.C. ("**Copeinca**"), as well as a General Manager of Sustainable Fishing Resources S.A.C. ("**SFR**") (collectively, the "**Foreign Debtors**"). A true and correct copy of my curriculum vitae is attached as **Exhibit A**.

2. My office is located at Calle Francisco Grana 155, La Victoria, Lima, Peru.

3. I am the authorized foreign representative of the Foreign Debtors in the above-captioned Chapter 15 case.

4. CFGI was incorporated under the laws of Peru and has its registered address located at Calle Francisco Grana 155, La Victoria, Lima, Peru.

5. Copeinca was incorporated under the laws of Peru and has its registered address located at Calle Francisco Grana 155, La Victoria, Lima, Peru.

6. Sustainable Fishing Resources was incorporated under the laws of Peru and has its registered address located at Calle Francisco Grana 155, La Victoria, Lima, Peru.

A.  **The China Fisheries Group of Companies**

7. The Foreign Debtors are wholly owned subsidiaries of China Fishery Group Limited, a public company incorporated under the laws of the Cayman Islands.[1]

8. The China Fishery group of companies (the "**CF Group**") holds the largest quota for the harvest of anchovy in Peru through CFGI and Copeinca (together, "**CFG Peru**"). The Foreign Debtors produce approximately 300,000 metric tons of fishmeal and 50,000 metric tons of fish oil which, in a normalized year, generates approximately $580 million in revenue and $200 million in EBITDA. As discussed in more detail below, the operating assets of CFG Peru consist of 10 plants located in 8 towns and villages in Peru and 54 vessels ranging in size from

---

[1] China Fishery Group Limited is the subject of a petition filed with this Court under Chapter 11 of title 11 of the United States Code.

220 to 800 cubic metres. In many of the towns in which the Foreign Debtors operate, it is the largest employer and the lifeblood of the community.

9.  The CF Group sources, harvests, on board-processes and delivers high-quality fish products to consumers around the world, and engages in fishing, fishmeal and fish oil processing and production in Peru for worldwide distribution. CFGI and Copeinca are the main operating entities of the CF Group's Peruvian operations. CFG Peru owns 10 processing plants (of which 9 are currently operating). These plants are strategically located along the coast of Peru to maximize the efficiency.

10.  The financial and operational condition of CFG Peru has deteriorated in the last 30 months. This is, in part, directly attributable to the effects on the anchovy fishery of El Niño which dominated the weather pattern from 2014 through early 2016.[2] The poor financial health of the CF Group, and in particular, the Foreign Debtors, has been materially exacerbated by damaging actions taken against the CF Group since November 2015 which has directly and detrimentally affected its business and operations. The Foreign Debtors' revenue and EBITDA for the last 6 months have declined substantially as a result of improper and unauthorised actions taken against the CF Group and more importantly, the Foreign Debtors.

B.  **The Appointment of Joint Provisional Liquidators**

11.  On November 25, 2015, three joint provisional liquidators (the "**JPLs**") were appointed on an *ex parte* basis over China Fishery Group Limited ("**CFGL**") and China Fisheries International Limited ("**CFIL**"). CFGL is the parent company of the Foreign Debtors.

---

[2] "During El Nino, upwelling brings up warm water with few nutrients. A serious economic consequence of El Niño is its devastating effect on the Peruvian anchovy fisheries. Populations of fish and seabirds vanish an anchovy catches the dwindle during El Niño. http://oceanworld.tamu.edu/students/fisheries/fisheries2.htm; "The Peruvian anchovy fishery, which is the biggest single-species fishery in the world, typically collapses during El Niño events." August 14, 2015, http://www.nereusprogram.org/ask-an-expert-how-will-this-years-el-nino-affect-oceans-and-fisheries/; A report regarding the effects of El Nino from April 1, 2014, stated that "[t]he weather phenomenon will particularly hit the anchovy stock and as a result the fishmeal industry . . ." https://www.undercurrentnews.com/2014/04/01/perus-anchovy-fishmeal-sector-set-for-strong-el-nino-effect-in-2014-expert-says.

3

Under the auspices of the orders entered by the Hong Kong Court and the Grand Court of the Cayman Islands (together, the "**Foreign Court Orders**"), the JPLs forced themselves into the businesses and offices of the Foreign Debtors. The Foreign Court Orders did not purport to directly have any effect in Peru and the JPLs never sought recognition of the Foreign Court Orders in Peru. The JPLs were never appointed in any respect or regard or held any direct authority over any entity organized under the laws of Peru as are the Foreign Debtors.

12. Notwithstanding their lack of authority, the JPLs, together with their Hong Kong legal counsel, went to Peru to meet with local suppliers, customers, workers, and each of the Peruvian banks which provided financing to the Foreign Debtors. In addition, without any basis in fact or law, the JPLs claimed that CF Group's management engaged in illegal and improper conduct. After the visit of the JPLs, warehouse companies and other suppliers were no longer willing to do business with the CF Group. Warehouse companies are an essential element of the CF Group's finance system (given that they have custody of the fishmeal which is security for the Inventory Financing). The loss of warehouse facilities meant that the CF Group's operations were shut down and its flow of revenue was terminated.

13. On January 5, 2016, I understand that the appointment of the JPLs was quashed by the Hong Kong court due to a failure by the petitioning party, The Hongkong and Shanghai Banking Corporation Limited ("**HSBC**"), to have presented any credible evidence supporting the appointment of the JPLs. Moreover, I was informed that the Court found that HSBC had only submitted evidence which was stale and did not merit the appointment of JPLs in any way. However, I was informed that the JPLs refused to relinquish control over the CF Group and the property within its control until January 20, 2016 when all of their fees were paid pursuant to a deed of undertaking entered into by CFGL and CFIL in favour of HSBC and Bank of America,

4

N.A. (the "**Deed**"), despite the fact that these fees were to be reviewed by the Hong Kong Court pursuant to normal practice. The Foreign Debtors therefore were instructed by their CFGL (in its capacity as a parent company of the Foreign Debtors) had to utilize its valuable and extremely limited cash resources to pay the very persons who had wrongfully interfered with the business, operations and viability of the Foreign Debtors in order to regain control over its business and affairs.

14. Although CFG Peru has taken steps to resuscitate the Peruvian fishmeal and fish oil operations of the CF Group after the JPLs were discharged and terminated, including, *inter alia*, continuing to meet and negotiate with local financiers in Peru to provide financing that were critical for the Foreign Debtors to resume its operations, attempting to restore the reputation of the Foreign Debtors locally to encourage suppliers, customers and other stakeholders to resume normal dealings with the Foreign Debtors, these attempts have proven to be substantially futile in light of the irreparable damage that was caused by the JPLs during their tenure. Consequently, the Foreign Debtors continue to be unable to resuscitate and normalize their fishmeal and fish oil operations or discharge their financial obligations to creditors, particularly under the Club Facilities and the Senior Notes.

C.  **The Debt Structure**

15. CFGI entered into an indenture dated July 30, 2012, pursuant to which CFGI issued $300 million in 9.75% guaranteed senior secured notes due 2019 (the "**Senior Notes**").

16. TMF Trustee Limited is the current trustee (the "**Trustee**") under the indenture for the Senior Notes (the "**Senior Notes Indenture**"), that has been amended and supplemented from time to time. CFGI's obligations under the Senior Notes are guaranteed by SFR, and numerous other affiliates of the Foreign Debtors.

5

17. CFGL and CFGI were unable to make the interest payment in the amount of approximately $14 million due on January 30, 2016, under the Senior Notes.

18. Each of CFGL, CFIL, CFGI and Copeinca entered into a facility agreement on March 20, 2014 with Rabobank International, Hong Kong Branch ("**Rabobank Hong Kong**"), DBS Bank (Hong Kong) Limited, HSBC, Standard Chartered Bank (Hong Kong) Limited and China CITIC Bank International Limited, as lenders, and Rabobank Hong Kong, as agent (the "**Club Loan Agreement**"). An unsecured facility in the principal amount of up to $650,000,000, of which approximately $418,182,000 in aggregate principal amount is outstanding (the "**Club Facilities**") was made available under the Club Loan Agreement. The borrowers under the Club Facilities are CFGI, Copeinca and CFIL, and the joint and several guarantors include, *inter alia*, CFGI, Copeinca, CFIL and CFGL.

19. The borrowers and guarantors of the Club Facilities were unable to make a principal repayment in the amount of approximately $36 million in November 2015.

20. In addition to the Senior Notes and the Club Facilities, the Foreign Debtors also have a small number of local creditors who provide goods and services to the Foreign Debtors.

D. **The Current Status of the Business**

21. During the period after the JPLs were discharged and terminated, the CF Group pursued a sale of its Peruvian fishmeal and fish oil business. However, I understand that the sale process was impeded in light of the difficulties that were faced by the management of the CF Group and CFG Peru in obtaining financing to resuscitate the business of CFG Peru. Local stakeholders such as vendors, workers and suppliers continued to express concern over the financial and operational condition of CFG Peru. Despite these difficulties, I was informed that a number of potential investors submitted non-binding offers ranging from $675 million to $1.5 billion, expressing an interest in purchasing the fishmeal and fish oil business. Notwithstanding

6

this positive development and progress, I understand that the CF Group continued to receive threats of enforcement from certain creditors, including HSBC, to apply for the re-appointment of JPLs in light of the CF Group's inability to consummate a sale by July 15, 2016. If there was a reappointment of JPLs, the damage that would be caused to the Foreign Debtors would be catastrophic and the little progress that had been made in the last 5 months in restoring some progress with certain local stakeholders would be completely obliterated.

22. In light of the looming July 15, 2016 deadline for HSBC and Bank of America, N.A. to be fully repaid, local stakeholders began to ask for updates with respect to an extension for the deadline stipulated under the Deed. However, based on discussions between the Foreign Debtors and the management of the CF Group, an extension of the stipulated deadline seemed unlikely and the re-appointment of JPLs appeared to be a very real and imminent possibility during July 2016. It was clear to the Foreign Debtors that any re-appointment of JPLs would be detrimental to the Foreign Debtors and threaten the viability of their businesses, even more than they did between November 2015 to January 2016.

23. The re-appointment of JPLs to implement a sale of the Peruvian fishmeal and fish oil business of the CF Group would likely result in the business being sold at a fire sale price which would result in a minimal recovery for the creditors of the CF Group.

24. The recoveries of creditors of the Foreign Debtors and the CF Group are likely to be materially greater in a restructuring in which the CF Group, and in particular, CFG Peru, continues to operate as a going concern when compared with the recoveries that would be received in a liquidation and/or forced sale of the Peruvian business. There is a material risk that a liquidation of the CF Group, in particular a fire sale of its Peruvian fishmeal and fish oil

business, could result in a much lower recovery for all creditors of the CF Group, including the holders of the Senior Notes and the lenders of the Club Facilities.

25. If the cash flow and on-going operations of the CF Group is jeopardized by the actions of holders of the Senior Notes and/or the lenders under the Club Facilities against the Foreign Debtors, the CF Group will not be able to maintain operations there would be no possibility of any potential restructuring of the CF Group.

### E. The Peru Proceeding

26. In order to prevent recovery or enforcement efforts by creditors of the CF Group that would jeopardize any possible restructuring by the Foreign Debtors, the Foreign Debtors wanted to avail themselves of protection under the laws of the Republic of Peru and in particular, the General Law of the Bankruptcy System (Law No. 27809) (the "**Peruvian Insolvency Law**") to ensure that any re-appointment of the JPLs in respect of CFGL and/or CFIL would not destroy the business of the Foreign Debtors. I am advised and understand that under Peruvian Insolvency Law, in order for the Foreign Debtors to institute voluntary ordinary restructuring proceedings in respect of themselves, each Foreign Debtor would have to submit audited financial statements for a period ending no later than two (2) months before the date on which the voluntary proceeding was initiated. However, given the defaults that had occurred under the Club Facilities and the Senior Notes and the uncertainty surrounding the CF Group and the sale process, it was not possible to obtain audited financial statements for each of the Foreign Debtors.

27. Based on discussions with its critical local stakeholders, the Foreign Debtors concluded that the only way to avail themselves of the necessary protection under Peruvian Insolvency Law would be to work with its local creditors for an involuntary ordinary bankruptcy proceeding to be instituted in respect of each of the Foreign Debtors. On June 30, 2016, each of Fishman S.A.C., Construcciones y Reparaciones Marinas S.A.C and Marines Forces S.A.C

initiated ordinary bankruptcy proceedings in respect of each of CFGI, Copeinca and SFR respectively, before El Instituto Nacional de Defensa de la Competencia y de la Protección de la Propiedad Intelectual (the National Institute for the Defence of Competence and Protection of Intellectual Property, also known as "**INDECOPI**"), the administrative and regulatory authority that adjudicates on and supervises the restructuring and bankruptcy of Peruvian companies who are subject to bankruptcy proceedings under the Peruvian Insolvency Law, for a proceeding to restructure and/or refinance the debts of the Foreign Debtors (collectively, the "**Peru Proceeding**"). Certified, true and correct copies of the petitions instituting the Peru Proceeding in respect of each of the Foreign Debtors are attached as **Exhibit B**.

28. I have been appointed as the foreign representative of each of the Foreign Debtors in connection with this Chapter 15 case by the shareholders of the Foreign Debtors. True and correct copies of the corporate resolutions appointing me as Foreign Representative are attached as **Exhibit C**.

29. As a result of the foregoing, to the best of my knowledge, information and belief, I am a person authorized to administer the reorganization of the Foreign Debtors' affairs and to represent the Foreign Debtors in these Chapter 15 cases. Therefore, I believe that I am a "foreign representative" within the meaning of § 101(24) of the Bankruptcy Code.

30. To the best of my knowledge, information and belief, the Peruvian Restructuring Proceeding is a collective administrative proceeding, including an interim proceeding, under Peruvian law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation. Accordingly, I believe that the Peruvian Restructuring Proceeding is a "foreign proceeding" within the meaning of § 101(23) of the Bankruptcy Code.

31. The Foreign Debtors are incorporated under Peruvian law and have each of their registered offices in Lima, Peru since their incorporation through the present. As a result, I believe that each of the Foreign Debtors has its "center of main interests" in Peru and, therefore the Peruvian Restructuring Proceeding should be recognized as a "foreign main proceeding" pursuant to § 1502(4) of the Bankruptcy Code.

32. To the best of my knowledge, information and belief, the Peruvian Restructuring Proceeding is the only pending debt adjustment or insolvency proceeding of any kind involving the Foreign Debtors.

33. A retainer has been paid on behalf of each of the Foreign Debtors to its counsel in the above-captioned Chapter 15 case, which is being maintained in a bank account in the United States. In addition, each of CFGI and Sustainable Fishing Resources are party to the Senior Notes Indenture which is governed by the laws of the State of New York. Other than the retainer funds and its rights under the Senior Notes Indenture, the Foreign Debtors do not have assets in the United States. The Foreign Debtors have no place of business in the United States.

34. In the Senior Notes Indenture, 2 of the Foreign Debtors (CFGI and Sustainable Fishing Resources) and the Trustee consented to jurisdiction in New York in connection with any suit, action or proceeding arising out of or relating to the Senior Notes. The Senior Notes Indenture also provides that the Senior Notes Indenture and the Senior Notes will be governed by, and interpreted in accordance with, the laws of the state of New York.

*[signature page follows]*

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed on June 30, 2016
in Lima, Peru

_____
Francisco Javier Paniagua Jara
Foreign Representative

11

## VERIFICATION

Francisco Javier Paniagua Jara, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States of America as follows:

I am the duly appointed foreign representative for the Foreign Debtors and have full authority to verify the foregoing Verified Petition.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 30, 2016
in Lima, Peru

_____
Francisco Javier Paniagua Jara
Foreign Representative

1126298

# EXHIBIT A
# CURRICULUM VITAE
# OF
# FRANCISCO PANIAGUA

# Francisco J. Paniagua

franciscopaniagua@msn.com
Av. José León Barandiarán 542, La Planicie, La Molina
Lima, Peru
(51) 989017000

## EDUCATION

**CORNELL LAW SCHOOL, Ithaca, New York**
LL.M                                                                                                                              May 2003

**PONTIFICIA UNIVERSIDAD CATÓLICA DEL PERÚ, Lima, Perú**
School of Law – Law Degree (*Juris Doctor equivalent*)                                                         1989 - 1994
School of General Studies – Bachelor in General Studies (*Bachelor of Arts equivalent*)        1987 - 1989

## PROFESSIONAL EXPERIENCE

**CORPORACION PESQUERA INCA SAC**
Deputy General Manager                                                                                            September, 2013 - Present

**CFG INVESTMENT S.A.C.**                                                                                         June, 2006 – Present
General Manager

**SUSTAINABLE FISHING RESOURCES S.A.C.**
General Manager                                                                                                          May, 2009 - Present

**ESTUDIO LUIS ESCHECOPAR GARCÍA ABOGADOS, Lima, Perú**
*Senior Associate*                                                                                                    August 2004 – June 2006
*Associate*                                                                                                              April 1999 – July 2002
Extensive experience in banking, securities, corporate, project finance, mergers and acquisitions, foreign investment, and general contractual matters. Member of the Law Firm board since 2006.

**CLEARY, GOTTLIEB, STEEN & HAMILTON**
*Foreign Associate Lawyer*                                                                                        September 2003 – May 2004
Latin America Practice, which involve the areas of Corporate, Securities and Project Finance. Conducted research, drafted documents and participated in negotiations.

**BANCO LATINO, Lima, Perú**
*Chief of the Consulting and Legal Department*                                                          August 1997 - April 1999
*In-house Consultant Lawyer*                                                                                    June 1995 - August 1997

## TEACHING EXPERIENCE

**PONTIFICIA UNIVERSIDAD CATÓLICA DEL PERÚ, Lima, Perú**
Teaching Assistant                                                                                                   August 1992 - December 1993
Taught Contracts

## BAR ADMISSIONS

Member of Lima Bar Association                                                                               1995

## BOARD MEMBERSHIPS

**AFP UNION, Lima, Peru** (A Peruvian subsidiary of Santander Central Hispano Group that manages pension funds in Peru)
Member of the Board                                                                                                 1999 – 2000

**NATIONAL FISHING SOCIETY (SNP)**
Member of the Board                                                                                                 2007 – Present
Second Vice-President                                                                                              2013 – 2015

**NATIONAL CONFEDERATION OF PRIVATE INSTITUTIONS (CONFIEP)**
Member of the Board                                                                                                 2014-Present

**TRANSPARENCY ASSOCIATION (TRANSPARENCIA)** (A Peruvian civil Association which mission is the strengthening of democracy and the quality of political representation)
Member of the Assembly                                                                                           2014-Present

## LANGUAGES

Spanish (native) and English (fluent)